# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

ALAN J. GOLDSTEIN,

      Plaintiff,

      v.

METROPOLITAN REGIONAL
INFORMATION SYSTEMS, INC.,

      Defendant.

Civil Action No. TDC-15-2400

## MEMORANDUM OPINION

This copyright infringement action is before the Court on Defendant Metropolitan Regional Information Systems, Inc.'s Motion to Dismiss. Having reviewed the Complaint and the briefs, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6 (2016). For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff Alan J. Goldstein is a professional photographer who holds a copyright, effective March 18, 2009, for a 2007 photograph he took of the Silver Spring Metro Station in Silver Spring, Maryland (the "Metro Photograph"). Goldstein displays the photograph on his website, www.goldsteinphoto.com, where the photograph appears with the watermark "© www.goldsteinphoto.com" centered at the bottom of the image. Compl. ¶ 15, ECF No. 1; *Id.* Ex. 2: Website Screenshot, ECF No. 1-2. Defendant Metropolitan Regional Information Systems, Inc. ("MRIS") operates an online real estate listing service that allows subscribers, mainly real estate brokers, to post listings for available properties for a fee. Subscribers agree to assign to MRIS the copyright in any photograph they upload to the database.

In May 2014, Goldstein learned that his Metro Photograph had been uploaded to the MRIS database without his knowledge or consent, either by MRIS itself, one of its agents, a subscriber, or an agent of a subscriber, at various points in 2013 and 2014. The uploaded Metro Photograph still had Goldstein's original watermark, but also had the additional watermark "© 2013 MRIS" or "© 2014 MRIS," depending on the year the image was uploaded, placed in the bottom left corner of the image. In a letter dated August 11, 2014, Goldstein's attorney informed MRIS that the Metro Photograph was being used on its site without Goldstein's authorization and demanded that MRIS cease use of the image immediately. Despite this notice, the Metro Photograph continued to be displayed on and uploaded to the MRIS site during 2014 and continuing into 2015, at which point the MRIS watermark was updated to "© 2015 MRIS." Goldstein asserts that as a result of the unlawful inclusion of the Metro Photograph on the MRIS database, the Metro Photograph has been uploaded to additional real estate websites and used in additional real estate promotional materials without his permission. Goldstein also asserts that MRIS has obtained at least one copyright registration for its website, and that the site as it was registered included the Metro Photograph.

On August 13, 2015, Goldstein filed this suit alleging five causes of action: (1) direct copyright infringement, in violation of 17 U.S.C. § 501 (2012); (2) contributory copyright infringement, in violation of 17 U.S.C. § 501; (3) a violation of the Digital Millennium Copyright Act ("DMCA"), specifically of 17 U.S.C. § 1202(a); (4) another violation of the DMCA, specifically of 17 U.S.C. § 1202(b); and (5) a violation of the Lanham Act, 15 U.S.C. 1125(a)(1) (2012). On September 4, 2015, MRIS filed a Motion to Dismiss that included nine exhibits, all of which MRIS asserts are integral to Goldstein's Complaint. Alternatively, MRIS argues that its Motion should be converted to one for summary judgment. Goldstein filed a

Memorandum in Opposition to the Motion on September 21, 2015. On October 8, 2015, MRIS filed a Reply Memorandum.

## DISCUSSION

MRIS seeks dismissal of Goldstein's Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) Goldstein fails to allege adequate facts to state a plausible claim of direct infringement; (2) Goldstein fails to allege adequate facts to state a plausible claim of contributory infringement; (3) MRIS is shielded from liability for direct and contributory copyright infringement by the safe harbor provision of the DMCA; (4) Goldstein fails to allege adequate facts to state a plausible claim under the DMCA; and (5) Goldstein's Lanham Act claim fails as a matter of law.

### I.    Legal Standards

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

In its Motion, MRIS relies on facts asserted in exhibits attached to its Motion, which include: a declaration from Brian R. Westley, MRIS's legal counsel, that details MRIS's response to the August 11, 2014 letter from Goldstein's counsel and later correspondence between the parties; copies of written correspondence between the attorneys related to possible

settlement; a declaration from Darren Lee Bailey, MRIS's Director of Application Management, that describes how the MRIS system works generally and, in particular, how images are uploaded to the system; copies of various parts of MRIS's terms of use; and a printout of a webpage from the United States Copyright Office indicating that the website MRIS.com has filed a designation of agent for notifications of infringement under the Copyright Act. MRIS claims that this evidence may be considered by the Court on the Motion to Dismiss because the evidence is "integral to the complaint and authentic." Mem. Supp. Mot. Dismiss ("Mot. Dismiss") at 6, ECF No. 11-1.

"[A]s a general rule, extrinsic evidence should not be considered at the 12(b)(6) stage." *Am. Chiropractic Assoc., Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation marks and citation omitted). A court may consider documents attached to a motion to dismiss only if those documents were "integral to and explicitly relied on in the complaint," if the plaintiff had "actual notice" of those documents, and if the plaintiff does not challenge their authenticity. *Id.* This standard is not met here. Goldstein's claims are based on the repeated uploading of his copyrighted image to the MRIS database and MRIS's insertion of its own copyright watermark on that image. In light of Goldstein's claims, it cannot fairly be argued that the Complaint explicitly relied on the additional settlement correspondence, MRIS's terms of use, or MRIS's designation of an agent for notifications of infringement. Further, any claim that Goldstein explicitly relied on, or had notice of, declarations of MRIS's attorney and its Director of Application Management executed after the Complaint was filed would be frivolous. These documents plainly cannot be considered integral to the Complaint and so will not be considered in evaluating the Motion to Dismiss.

Alternatively, MRIS suggests that this Court convert the Motion into one for summary judgment, at which point the Court could consider the exhibits. However, Goldstein, citing Federal Rule of Civil Procedure 56(d), asserts that summary judgment would be premature because he has not yet had time to conduct discovery. Pl.'s Opp'n Mot. Dismiss ("Opp'n") at 8 n.2, ECF No. 15. Although a party may move for summary judgment before the commencement of discovery, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). That is the situation here. MRIS's exhibits are aimed at establishing that the images on its website are uploaded solely by users and that any addition of MRIS's own copyright to those images is done automatically, conditions that MRIS argues would permit MRIS to take refuge in the DMCA's safe harbor defense to claims of copyright infringement, discussed in more detail below. *See infra* part IV. However, Goldstein has yet to have the opportunity to engage in discovery to test these assertions and, more broadly, to uncover evidence relating to the issue of MRIS's knowledge about and involvement in the uploading of the Metro Photograph, an issue relevant to the DMCA safe harbor provision. Conversion to summary judgment now would short-circuit this necessary stage of the litigation. The Court therefore rejects MRIS's request to convert its Motion to Dismiss into a Motion for Summary Judgment.

## II.    Count I:  Direct Infringement

MRIS asserts that the Complaint fails to state a claim for direct infringement of Goldstein's copyright because Goldstein has not alleged "volitional conduct" by MRIS. Mot. Dismiss at 17. To state a claim of direct copyright infringement, a plaintiff must allege facts

that, when credited, establish that the plaintiff owns a valid copyright in the work allegedly infringed upon and that the defendant has copied "constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Svc. Co., Inc.*, 499 U.S. 340, 361 (1991). Here, Goldstein has asserted that he has a valid copyright in the Metro Photograph and provides a document supporting that assertion. *See* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright[.]"). There is no dispute that the Metro Photograph has been uploaded to the MRIS website or that the photograph, which appears on the site in its entirety, contains constituent elements of the work that are original. *See Feist*, 499 U.S. at 345 (stating that, for copyright purposes, something is original if it was "independently created by the author" and "possesses at least some minimal degree of creativity").

Thus, the only issue in contention is whether Goldstein has alleged that MRIS engaged in "volitional conduct" in copying the Metro Photograph to MRIS's webpage. In asserting that Goldstein has failed adequately to plead that MRIS engaged in volitional conduct, MRIS relies heavily on *Costar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004). In *Costar*, the defendant, LoopNet, was an online real estate listing service that allowed users to post real estate listings with photographs, required those users to certify that the photographs were not copyrighted by others, and conducted a cursory check of photographs for any explicit copyright markings before allowing them to be posted. *Id.* at 556. A number of photographs copyrighted by Costar, but which bore no copyright marks, were posted on LoopNet without Costar's permission. *See Costar Group Inc. v. LoopNet, Inc.*, 164 F. Supp. 2d 688, 698 (D. Md. 2001). The issue on appeal was whether LoopNet's general practice of checking for copyright markings

6

before allowing images to be posted amounted to "volitional conduct" such that LoopNet was open to liability for direct copyright infringement for using Costar's unmarked photographs without permission. In affirming the district court's grant of summary judgment to LoopNet, the United States Court of Appeals for the Fourth Circuit held that direct copyright infringement requires "actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the machine owner himself trespassed on the exclusive domain of the copyright owner." *Costar*, 373 F.3d at 550. The Court further stated that there must be "some aspect of volition and meaningful causation," rather than simply "passive ownership and management of an electronic Internet facility" in order for direct infringement liability to attach. *Id.* Applying this standard, the Fourth Circuit concluded that even though LoopNet conducted a cursory check of uploaded images for copyright marks, LoopNet was a passive Internet service provider ("ISP") that could not be held liable for direct infringement of Costar's copyright when Costar's unmarked photographs appeared on its website. *Id.* at 556.

MRIS argues that *Costar* is on all fours with the present case. *Costar*, however, was decided at the summary judgment stage. On a motion to dismiss, where the Court considers only the allegations in the Complaint and views those allegations in the light most favorable to the nonmoving party, Goldstein's Complaint has stated a claim. Goldstein alleges that MRIS or an agent of MRIS uploaded the Metro Photograph and includes in support of that allegation Exhibit 3 to the Complaint, a screenshot of a slide in a slideshow that was available on the MRIS website on August 11, 2014. That slide contains only the Metro Photograph, annotated with Goldstein's watermark and MRIS's added watermark "© 2014 MRIS," and does not contain any reference to a particular real estate agent or broker, or to a particular property. Drawing all inferences in Goldstein's favor, this Exhibit, particularly with the markings added by MRIS, supports the

7

reasonable inference that MRIS or its agent, rather than an outside user of MRIS, engaged in direct infringement by copying Goldstein's copyrighted photograph to its website. *See Lambeth*, 407 F.3d at 268 (holding that a claim should be dismissed under Rule 12(b)(6) "only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief.").

Moreover, Goldstein's Complaint alleges three crucial facts not present in *Costar*:   (1) when MRIS received it, the Metro Photograph, on its face, was marked as copyrighted by Goldstein; (2) MRIS, unlike LoopNet, took the affirmative step of marking the Metro Photograph as subject to its own copyright; and (3) MRIS then copyrighted its entire website, including the Metro Photograph.   Thus, based on the allegations in the Complaint, MRIS's actions went well beyond the "passive ownership and management" of a website that was at issue in *Costar*.   Rather than simply providing a passive venue for others to post photographs, MRIS doubly asserted a copyright in the Metro Photograph by stamping that facially copyrighted photograph with its own copyright markings and then copyrighting the entire website containing that photograph.   Based on these actions, the Court cannot, at the motion to dismiss stage, rule out the possibility that MRIS engaged in the necessary volitional conduct to establish direct copyright infringement.   Thus, the Motion is denied as to Count I.

### III.   Count II: Contributory and Vicarious Infringement

MRIS also argues that the Complaint fails to state a claim for contributory infringement. Although the copyright statute does not expressly provide for "imposition of liability for copyright infringement on certain parties who have not themselves engaged in infringing activity," the United States Supreme Court has made clear that common law principles of contributory or vicarious liability, which are "imposed in virtually all areas of the law," can be applied in the copyright context. *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 435

(1984). As copyright law has developed in the context of the internet, three sub-species of vicarious liability have developed, all of which Goldstein pleads here. The Court addresses each in turn.

## A. Contributory Infringement

To state a viable claim for contributory copyright infringement, a plaintiff must allege facts that, taken as true, establish that the defendant knew or had reason to know of the infringing activity and either induced, caused, or materially contributed to that infringing activity. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019-20 (9th Cir. 2001).

Here, Goldstein adequately alleges these elements. The Complaint asserts that at various times in 2013, 2014, and 2015, the Metro Photograph, with Goldstein's copyright watermark, was uploaded to the MRIS website. Thus, beginning in 2013, MRIS knew or had reason to know of Goldstein's copyright, because "[w]here works contain copyright notices within them, as here, it is difficult to argue that a defendant did not know that the works were copyrighted." *Religious Tech. Ctr. v. Netcom On-Line Commc'n Svcs., Inc.*, 907 F. Supp. 1361, 1374 (N.D. Cal. 1995). By at least August 11, 2014, when Goldstein's attorney sent a cease and desist letter to MRIS, MRIS then knew or had reason to know that the use of the Metro Photograph on the MRIS site was in violation of that copyright. Considering that even under the heightened pleading standards for fraud claims under Federal Rule of Civil Procedure 9(b)—a standard more stringent than the one required here—"knowledge [] and other conditions of a person's mind may be alleged generally," the "knowledge" element of contributory infringement is satisfied.

As to the requirement that the defendant induce, cause, or materially contribute to the infringement, Goldstein asserts that when the Metro Photograph was uploaded to the MRIS website, MRIS added to the image its own copyright. Drawing all inferences in Goldstein's

favor, MRIS's practice of adding its own copyright to the Metro Photograph, a practice it continued even after being placed on notice that the Metro Photograph was being used on its website without Goldstein's permission, can reasonably be considered "conduct that encourages or assists the infringement." *A&M Records*, 239 F.3d at 1019 (quoting *Matthew Bender & Co., Inc. v. West Pub. Co.*, 158 F.3d 693, 706 (2d Cir. 1998)). For example, the addition of the MRIS copyright markings could lead MRIS users to believe that they had a license to use the Metro Photograph in their listings as part of their subscription to the MRIS service. By taking an affirmative step that could mislead others into concluding that it held a copyright in the Metro Photograph, MRIS can reasonably be said to have encouraged or assisted in enabling its subscribers to infringe Goldstein's copyright in that image.

Finally, Goldstein's allegation that MRIS has allowed that infringing activity to continue to the present day, even after it received actual notice of the infringing activity in August 2014, supports a claim of contributory infringement. "[I]f a computer system operator learns of specific infringing material available on [its] system and fails to purge such material from the system, the operator knows of and contributes to direct infringement." *A&M Records*, 239 F.3d at 1021. Although MRIS asserts that "each time" it was informed by Goldstein that the Metro Photograph appeared on the site, MRIS promptly removed the image, Mot. Dismiss at 15, Goldstein's version of events must be credited on a motion to dismiss, and in any event, MRIS does not refute Goldstein's allegation that even with such corrective activity, the Metro Photograph continues to re-appear on the MRIS website with some frequency. Thus, Goldstein has adequately alleged a claim of contributory copyright infringement.

**B.      Vicarious Infringement and Inducement Liability**

In the same count, Goldstein also alleges vicarious infringement and inducement liability. These additional theories are less promising.   Although contributory infringement involves "inducing or encouraging direct infringement," the Supreme Court has held that vicarious infringement consists of "profiting from direct infringement while declining to exercise a right to stop or limit it."  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).  To establish vicarious liability, a plaintiff must show that the defendant (1) had the right and ability to supervise the infringing activity; and (2) had a direct financial interest in the infringing activity."  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262-63 (9th Cir. 1996). Such a direct financial interest arises where the infringing activity is a "draw" for customers and significant financial benefits "flow directly" from the infringing activity that the defendant helps to facilitate.  *Id.* at 263-64.  For example, vicarious liability can exist against a landlord who charges rent to vendors at a swap meet where pirated music was sold, *Fonovisa*, 76 F.3d at 263, or the owner of a chain of department stores at which counterfeit recordings were sold by a concessionaire, *Shapiro, Bernstein and Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963). Goldstein's allegations fail to meet this standard.  Although MRIS likely had the right and ability to control the infringing activity and charged a fee to post listings on its website, the website has as its main purpose the posting of real estate listings, a purpose distinct from trafficking in infringing material.  It is therefore not reasonable to conclude that the availability of infringing photographs such as the Metro Photograph drew customers to subscribe to the MRIS service. Thus, Goldstein has not stated a viable claim for vicarious infringement.

For much the same reason, Goldstein's claim for inducement liability also fails. Inducement liability, a new sub-species of copyright infringement created in response to the

expansion of the internet, renders a defendant liable for copyright infringement if he has "distribute[d] a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." *Grokster*, 545 U.S. at 936-37. In *Grokster*, the distributor of file-sharing software that allowed users to reproduce and exchange copyrighted music and video files was deemed liable for copyright infringement under this theory. *Grokster*, 545 U.S. at 919-21. Here, the MRIS database cannot fairly be described as a device to promote copyright infringement relating to photographs. Goldstein therefore fails to state a viable claim that MRIS is liable for inducing copyright infringement. Thus, although the Court denies the Motion to Dismiss as to Count II of the Complaint, Goldstein may proceed only under a theory of contributory infringement, not under the theories of vicarious infringement and inducement liability.

## IV.    The DMCA Affirmative Defense

MRIS's also argues that Goldstein's copyright infringement claims must be dismissed because MRIS meets all of the requirements of the DMCA's safe harbor provision for ISPs and because Goldstein did not plead adequate facts countering this defense. Under this provision, an ISP may not be found liable for monetary and other relief stemming from copyright infringement claims based on "the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider" if the ISP:

> (A)(i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
> (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
> (iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
> (B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

> (C) upon notification of claimed infringement … responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

17 U.S.C. § 512(c)(1).

MRIS's argument fails for several reasons. First, the Fourth Circuit has emphasized that on a Rule 12(b)(6) motion, a court "cannot reach the merits of an affirmative defense unless all facts necessary to the affirmative defense clearly appear *on the face of the complaint.*" *Waugh Chapel South, LLC v. United Food and Commercial Works Union Local 27*, 728 F.3d 354, 360 (4th Cir. 2013) (internal quotation marks, ellipses, and citation omitted) (emphasis in original). In asserting this affirmative defense, MRIS relies on facts extrinsic to the Complaint, particularly those contained in the Bailey Declaration, about how the MRIS uploading system works; MRIS's general procedures related to the screening, or lack thereof, of photos uploaded to the site; and the actions MRIS has taken when notified that the Metro Photograph appeared on its website. Because the facts necessary to MRIS's affirmative defense are not on the face of the Complaint, the Court cannot at this point reach the merits of MRIS's claim that it is shielded from liability for copyright infringement by the DMCA safe harbor provision.

Second, MRIS's effort to establish, element-by-element, that Goldstein has failed to allege facts sufficient to refute the elements of the DMCA safe harbor provision, is fundamentally flawed. It is MRIS's burden to plead its affirmative defense, not Goldstein's burden to anticipate that defense in his Complaint and parry it before it has even been officially asserted. Fed. R. Civ. P. 8(c) (stating that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense"). There is no requirement that the Complaint eviscerate the affirmative defense to avoid dismissal.

MRIS's reliance on *Costar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004), in this context is again unpersuasive. *Costar* did not directly apply the DMCA safe harbor provision. *Id.* at 555. Rather, as discussed above, *see supra* part II, it concluded more broadly that "an ISP who owns an electronic facility that responds automatically to users' input is not a direct infringer," and specifically that LoopNet had not directly infringed Costar's copyright when Costar's photographs appeared on its website. *Id.* at 556. Although *Costar* arguably establishes that an online real estate listing service such as MRIS would constitute an ISP for purposes of the DMCA safe harbor provision, it does not establish that MRIS, under the facts alleged in the Complaint, is entitled to dismissal under Rule 12(b)(6) based on that defense. In fact, the Complaint alleges specific facts that tend to refute required elements of the affirmative defense, namely the elements that the defendant "does not have actual knowledge" that the material is infringing or that it is "not aware of facts or circumstances from which infringing activity is apparent." 17 U.S.C. 512(c)(1). Unlike in *Costar*, Goldstein alleges that the Metro Photograph, on its face, contained a watermark indicating that it was copyrighted, which would support the inference that MRIS had actual knowledge that its use would infringe a copyright. Goldstein also alleges facts that indicate that MRIS did not act "expeditiously to remove, or disable access to, the material," specifically his allegation that the Metro Photograph continued to appear on the MRIS website long after Goldstein had notified MRIS that it was copyrighted. Finally, the fact that MRIS, unlike the online real estate listing service in *Costar*, affirmatively imprinted its own copyright markings onto the Metro Photograph casts doubt on whether MRIS was merely engaged in "storage at the direction of a user of material that resides on a system or network" as required to qualify for the DMCA safe harbor provision, rather than the affirmative

14

appropriation of another's copyright. 17 U.S.C. § 512(c)(1). Thus, dismissal at the pleading stage based on the safe harbor provision would be wholly inappropriate.

## V. Counts III & IV: Violations of the DMCA

MRIS asserts that Goldstein has failed to state a claim for a violation of the DMCA. Goldstein alleges separate violations of two different subsections of the DMCA: 17 U.S.C. §1202(a) (Count III) and 17 U.S.C. § 1202(b) (Count IV). The former makes it unlawful for a person to "knowingly and with the intent to induce, enable, facilitate or conceal infringement provide copyright management information that is false." 17 U.S.C. § 1202(a)(1). The latter prohibits a person, "without the authority of the copyright owner or the law," either to "intentionally remove or alter any copyright management information" 17 U.S.C. § 1202(b)(1), or to "distribute" work "knowing that copyright management information has been removed or altered," *id.* § 1202(b)(3). Section 1202(b) has the additional scienter requirement that the action be taken "knowing or . . . having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement." *Id.* §1202(b). For the reasons set forth below, the Court finds that the Complaint adequately states a claim for violations of both provisions.

### A. Copyright Management Information

MRIS asserts that both Counts Three and Four should be dismissed because Goldstein failed to allege either that MRIS provided or altered "copyright management information" ("CMI") within the meaning of the DMCA. CMI is defined, in relevant part, as "any of the following information conveyed in connection with copies . . . of a work . . . including in digital form . . . ":

    (1) The title or other information identifying the work, including the information set forth on a notice of copyright.
    (2) The name of, and other identifying information about, the author of a work.

> (3) The name of, or other identifying information about, the copyright owner of
> the work, including the information set forth in a notice of copyright.

17 U.S.C. § 1202(c).

Focusing on § 1202(c)(3), MRIS argues that Goldstein's watermark on the Metro

Photograph, © www.goldsteinphoto.com, fails to qualify as CMI under the DMCA because it

does not include all of the elements of a "notice of copyright," which is defined in the Copyright

Act as consisting of:  (1) the symbol ©, the word "Copyright," or the abbreviation "Copr."; (2)

the year of the first publication of the work; and (3) the name of the owner of the copyright or

any recognizable abbreviation or alternative designation thereof.  17 U.S.C. § 401(b).  Under this

standard, Goldstein's watermark would be insufficient because, as MRIS rightly points out, it

does not contain the year of first publication.

However, MRIS's argument is flawed because the plain language of the statute does not

equate CMI with a notice of copyright.  Section 1202(c)(3) makes reference to a notice of

copyright only in a grammatically non-restrictive modifying phrase:  "The name of, and other

identifying information about, the copyright owner of the work, *including information set forth*

*in a notice of copyright*" (emphasis added).  If, as MRIS asserts, § 1202(c)(3) defines CMI as the

equivalent of a notice of copyright, the bulk of the statutory language in that provision would be

surplusage, since a notice of copyright already requires the name of the copyright holder.  *See* 17

U.S.C. § 401(b).  Considering that the DMCA was passed expressly as an adjunct to preexisting

copyright law, had Congress intended CMI to be equivalent to a notice of copyright, it could and

would have said so.  *See* S. Rep. 105-190 (1998) at 2 (noting that the purpose of the DMCA was

to bring "U.S. copyright law squarely into the digital age").  Rather, the Senate Report on the

DMCA, like the statutory language, defines CMI broadly to include "such items as the title of the

work, the author, the copyright owner, and in some instances, the writer, performer and director." *Id.* at 16.

Courts have accordingly interpreted the definition of CMI broadly to include references to the copyright owner, without insisting on the inclusion of each of the elements of a notice of copyright. *See Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 304-06 (S.D.N.Y. 2011) (holding that the notations "Morel," "daniel morel," and "photomorel," which appeared next to images as part of the photographer's Twitter page, were CMI within the meaning of §1202(c)); *Cable v. Agence France Presse*, 728 F. Supp. 2d 977, 981 (N.D. Ill. 2010) (denying the defendant's motion to dismiss the plaintiff's DMCA claim based on faulty CMI "[b]ecause under the plain language of the [DMCA], the plaintiff's name and hotlink fall within the scope of 'copyright management information'"); *cf. Murphy v. Millennium Radio Group LLC*, 650 F.3d 295, 302, 305 (3rd Cir. 2011) (stating that § 1202 creates a cause of action for the removal of "the name of the author of a work when it has been 'conveyed in connection with copies of' the work" and "imposes no explicit requirement that such information be part of an 'automated copyright protection or management system'"). Thus, Goldstein's mark on the Metro Photograph, consisting of the copyright symbol and his website address, which includes his name, meets the definition of CMI contained in § 1202(c)(3) because it contains "[t]he name of, or other identifying information about, the copyright owner of the work."

Finally, the same information also qualifies as CMI because it contains "[t]he name of, and other identifying information about, the author of a work," as required by 17 U.S.C. § 1202(c)(2), a subsection that contains no reference to "notice of copyright" at all. *See Morel*, 769 F. Supp. 2d at 305 (concluding that references to the photographer's name appearing next to an image referred to authorship). Thus, the Court rejects MRIS's claim that the Goldstein has

failed adequately to allege a DMCA claim because the markings on the Metro Photograph do not meet the definition of CMI.

## B.    Count III:  Violation of 17 U.S.C. § 1202(a)

The Complaint alleges that MRIS repeatedly added its own copyright watermark to the Metro Photograph, despite the fact that it holds no copyright in that image.  Goldstein further generally alleges that MRIS's addition of its watermark to his image was done knowingly and with the intent to facilitate copyright infringement.  Because the MRIS watermark meets the definition of CMI, *see supra* part V.A, the Complaint states a valid claim that MRIS "knowingly and with the intent to induce, enable, facilitate or conceal infringement . . . provide[d] copyright management information that is false." 17 U.S.C. § 1202(a)(1).

Despite these allegations, MRIS seeks dismissal of Count III for two reasons.  First, while MRIS does not dispute that it holds no copyright in the Metro Photograph, it asserts that it holds a copyright in the database as a whole, as well as in specific portions of it.  MRIS thus argues that it has a "good faith belief" that the MRIS copyright watermark on the Metro Photograph is not false. Mot. Dismiss at 23.  Not only is this claim generally unpersuasive in light of the unmistakable presence of Goldstein's CMI on the face of the Metro Photograph, but MRIS's assertion of good faith does not appear on the face of the Complaint and therefore is not subject to consideration on a motion to dismiss. *Waugh Chapel South*, 728 F.3d at 360.

Second, MRIS disputes Goldstein's allegation that the MRIS copyright mark was added knowingly and with the intent to facilitate infringement, asserting that the mark is added "automatically" to all images uploaded to their site, such that the requisite scienter for a violation of § 1202(a)(1) is lacking. Mot. Dismiss at 22.  Again, this assertion is not contained in the Complaint and therefore may not be considered on a motion to dismiss. *Am. Chiropractic*

18

*Assoc.,* 367 F.3d at 234. Furthermore, not only may knowledge and intent be pleaded generally, *see* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge and other conditions of a person's mind may be alleged generally."), but the undisputed fact that Goldstein's copyright mark was stamped on the Metro Photograph *before* the MRIS copyright mark was added is itself enough, at this stage of the proceedings, to support the inference that MRIS knew its CMI was false and that MRIS intended to facilitate infringement through its false claim of copyright in the Metro Photograph. In addition, by at least August 2014, when MRIS was contacted by Goldstein's attorney, MRIS had actual knowledge that the Metro Photograph was being used on its website in violation of Goldstein's copyright, that its system—automatically or otherwise—was affixing an MRIS copyright notice to that image despite Goldstein's ownership of it, and that Goldstein objected to both the use of the Metro Photograph on the site and MRIS's addition of its copyright notice. Despite this actual knowledge, MRIS continued to affix its own copyright notice to the Metro Photograph. Thus, MRIS's protest that it did not knowingly affix the MRIS copyright mark does not provide a basis to dismiss Goldstein's § 1202(a) claim.

### C.   Count IV: Violation of 17 U.S.C. § 1202(b)

A violation of 17 U.S.C. § 1202(b) requires that a person "intentionally remove or alter any copyright management information," 17 U.S.C. § 1202(b)(1), or distribute or publicly perform a copyrighted work whose CMI has been "removed or altered," 17 U.S.C. § 1202(b)(3). MRIS argues that Count IV should be dismissed because Goldstein's copyright mark was neither removed nor altered by the process that led to the affixing of MRIS's own copyright mark.

Goldstein concedes that his CMI was not directly removed or altered by MRIS. Rather, he asserts that by adding its own CMI to the Metro Photograph in a location adjacent to Goldstein's CMI, MRIS engaged in a "constructive" alteration of Goldstein's CMI. Opp'n at 16.

On this point, he argues that MRIS's CMI was "more eye-catching" and emphasizes that, reading from left to right, MRIS's CMI appeared before his, giving it "more visual impact" and "undercutting" the message that Goldstein owned the copyright. *Id.* He contends that whether this juxtaposition amounted to a constructive alteration is an issue of fact for the jury.

There is nothing in the statutory language that expressly defines or cabins what it is to "alter" CMI. However, Goldstein cites no case law in which a theory of "constructive alteration" of CMI has been alleged, much less deemed viable. The case law relating to § 1202(b) instead focuses almost entirely on the removal of CMI, not on the alteration of CMI. The few cases alleging alteration of CMI involve changes made to the copyright holder's CMI itself, not, as here, the juxtaposition of two competing CMIs. *See, e.g., BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 610 (S.D.N.Y. 2010) (considering the defendant's alleged alteration of the plaintiff's CMI from "© [year of publication] BanxCorp. All Rights Reserved" to "National Average of [Annual Percentage Yields] for money market accounts as published by BanxQuote.com as of 5/22/07") (brackets in original)).

Conversely, MRIS cites no controlling legal authority foreclosing a constructive alteration theory. Rather, MRIS asserts that Goldstein's interpretation of "alter" would "create an impermissible redundancy in the statute" because it would make § 1202(b) "indistinguishable" from § 1202(a). Def.'s Reply Mem. Mot. Dismiss at 16, ECF No. 17. The rule of statutory construction on which MRIS relies, however, is that statutory language should not be construed so as to make a provision "*entirely* redundant." *Kungys v. United States*, 485 U.S. 759, 778 (1988) (emphasis added). Here, Goldstein's interpretation of "alter" under § 1202(b) would not render § 1202(a) "entirely redundant" because § 1202(a) would still apply in cases where false CMI was added to an image that otherwise had no CMI.

With neither the statutory language nor the rules of statutory construction providing a bar to Goldstein's claim, the Court will not dismiss it.  At this stage of the proceedings, the dearth of authority supporting Goldstein's legal theory should not cut entirely against him because "court[s] should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions." *Elec. Constr. & Maint. Co., Inc v. Maeda Pacific Corp.*, 764 F.2d 619, 623 (9th Cir. 1985) (citing 5 C Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1357 at 603 (1969)).  Particularly where MRIS's copyright mark was placed immediately before Goldstein's copyright mark and used more recent dates, that mark could be construed as trumping, diluting, or superseding, and thus altering, Goldstein's CMI.[1]

## VI.    Count V: Lanham Act Claim

Goldstein lastly pleads a claim under the Lanham Act, 15 U.S.C. § 1125(a), which provides that:

> (1)  Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A)  is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

---

[1]   The Court also notes that in allowing Goldstein to proceed on his § 1202(b) theory of liability, it is not exposing MRIS to liability beyond the scope of the liability it faces under Goldstein's § 1202(a) claim.  Goldstein bases all of his DMCA claims on the same alleged facts leading to the same alleged injuries and thus does not have an independent basis to recover under both subsections. *See Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n,* 446 U.S. 318, 333 (1980) ("It also goes without saying that the courts can and should preclude double recovery by an individual.").

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities,

shall be liable in a civil action.

15 U.S.C. § 1125(a)(1). Although Goldstein does not expressly identify under which subsection his cause of action is brought, the substance of his allegations comports with the language § 1125(a)(1)(A).

Specifically, Goldstein asserts that MRIS's addition of its own copyright mark to the Metro Photograph amounts to a false representation within the meaning of the Lanham Act. Goldstein's claim fails as a matter of law. In *Dastar Corp. v. Twentieth Century Fox Film Corp.* 539 U.S. 23 (2003), the Supreme Court held that claims of false advertising and trademark infringement under the Lanham Act do not overlap with copyright claims. Instead, the "origin of goods" language of the Lanham Act limits actions under that statute to claims involving "tangible goods that are offered for sale," and does not apply to claims involving "the author of any idea, concept, or communication embodied in those goods," which are instead the subject of copyright protection. *Id.* at 37. Thus, "creative" works, those artistic creations that fall within the ambit of copyright law, necessarily fall outside the scope of the Lanham Act. *Id.* "To hold otherwise would be akin to finding that [the Lanham Act] created a species of perpetual patent and copyright, which Congress may not do." *Id.* Here, the Metro Photograph is a creative work protected by a copyright. Goldstein's Lanham Act claim must therefore be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, MRIS's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. It is denied as to Counts I, III and IV, denied as to Count II on the allegation of contributory infringement but granted as to the allegations of vicarious infringement and inducement liability, and granted as to Count V. A separate Order shall issue.

Date: August 11, 2016

THEODORE D. CHUANG
United States District Judge

23